(34 South. 744.)

No. 14,706.

ROBICHAUX v. SEGURA SUGAR CO., Limited.*

(April 27, 1903.)

**CONTRACTS—BREACH—EVIDENCE—DAMAGES.**

1. Plaintiff, a cane grower, sold his cane crop to the defendant, a sugar factory. The cane was to be delivered at a switch on the tramroad

---

*Rehearing denied June 26, 1903.

110 LOUISIANA REPORTS.

of the defendant at the rate of not less than one-seventieth of the total crop per day, the grinding to begin not later than October 25th. The tramroad traversed the lands of plaintiff and other landowners, who had agreed to give a right of way and build the roadbed; defendant agreeing to haul the cane of these landowners at 50 cents per ton. The landowners did all the work that was required of them on the roadbed, defendant's engineer superintending the work. Owing to rainy weather and early frost, the roadbed proved deficient, and the juice of the cane proved of poor quality, so that the grinding was slow, and the car service on the road was bad. Owing to these causes, defendant was unable to receive the cane according to contract. The plaintiff would have delivered the cane if defendant had been ready to receive it. The grinding season lasted more than 70 days. Part of the cane soured, and was lost. *Held*, defendant is answerable for the lost cane at the contract price.

2. The price was to be regulated by the market price of sugar. To prove this price, evidence of what defendant paid during the season for cane received under the contract with plaintiff, and under similar contracts with other cane growers, was properly admitted; and the average of the prices so paid may be accepted as the price which the cane lost would have brought if defendant had accepted the delivery of it according to the contract.

(Syllabus by the Court.)

Appeal from Nineteenth Judicial District Court, Parish of Iberia; T. Don Foster, Judge.

Action by Onezephore Robichaux against the Segura Sugar Company, Limited. Judgment for plaintiff, and defendant appeals. Affirmed.

Walter J. Burke & Bro., for appellant. Cammack & Muller, for appellee.

PROVOSTY, J. On the 9th day of August, 1898, plaintiff and defendant entered into the following contract, viz.:

"The Segura Sugar Company, Ltd., located in the parish of Iberia, La., on the Segura Plantation, party of the first part, and O. Robichaux, party of the second part, have entered into the following agreement:

"Said party of the second part, owner of cane crop now growing on his land, situated in the parish of Iberia, state of Louisiana, agrees to sell and does hereby sell unto party of the first part the cane crop, consisting of six acres of plant cane of stubbles, intended for the mill.

"Said party of the second part binds himself to deliver at Robichaux all of said cane, which shall be sound, unfrozen cane, free from leaves, trash or dirt. The tops to be cut in the first solid joint below the white.

"The delivery of said cane is to start on a date to be specified by the party of the first part, but which shall be no later than the 25th day of October next and be completed no later than the 5th day of January following, and shall be considered as made on the arrival of said cane at the sugar house scales, belonging to the party of the first part.

"The daily delivery of cane shall be determined by the party of the first part, but shall be no less than one-seventieth of the total amount contracted herein, all conditions and weather permitting.

"In consideration of which the party of the first part agrees to pay unto the party of the second part for all cane so delivered, said cane to be weighed on the scales at Segura, the sum of $0.85 per ton of 2,000 lbs. for each cent that prime yellow clarified sugar sells for during the week of delivery, first official quotations of the New Orleans Sugar Exchange to be taken each day to make the average, which price shall constitute the price of this contract.

"The manufacture of said cane into sugar at the aforesaid sugar house being a material consideration of this contract, it is expressly stipulated and agreed that in the event of fire, breakage of machinery or any other cause beyond the control of said party of the first part, but of such a nature as to prevent for more than 6 consecutive days the manufacture of said cane into sugar at the aforesaid sugar house, this contract to become null and void for all cane not previously delivered at said sugar house.

"Should however the mill operations be stopped but for a few days, owing to any cause, this contract to continue in full force, but the said party of the second part agrees not to hold said party of the first part in any manner responsible for any loss which may be incurred to the party of the second part owing to the non-reception of cane by the party of the first part during the said time of stoppage.

"Settlements to be made on every Thursday for all cane delivered up to the preceding week. Freight to be deducted herefrom at 50c. per ton."

It is noted that under this contract the

cane was to be delivered at Robichaux. This was a station or switch on defendant's tramroad. Plaintiff complains that defendant failed to furnish cars as agreed, in order that one-seventieth of the crop might be delivered daily, and that as a consequence a considerable part of the cane was lost, and he claims of defendant the value of this cane. He sues also as subrogee of others, whose claims are alleged to have accrued under similar contracts and circumstances, and at the same time.

Defendant does not seriously contest the amount of plaintiff's loss, contenting itself with animadverting upon the dilatoriness of plaintiff and his assignors in bringing this suit, which was not filed until January, 1902, three years after the loss, and when the procuring of testimony to rebut that of plaintiff and his assignors on the subject of the amount of cane lost had become exceedingly difficult. In view of this tardiness, greater strictness of proof of the loss must be exacted of plaintiff. Courts do not relish stale demands, but the court a qua thought, and we think, plaintiff has fully discharged this burden.

Defendant does not pretend to have furnished the cars as required by the contract, but denies that this was the cause of plaintiff's loss; laying the loss to the early frost, which injured the cane of plaintiff and his assignors, whereby it ceased to be the "sound, unfrozen" cane called for by the contract. Also it attributes the delay in furnishing the cars to the congested condition of the sugar mill, which necessitated occasional interruptions in the delivery of cane; this congestion being brought about, not by any defect in the machinery or any fault of defendant, but by the poor quality of the cane juice, which made the process of manufacturing unusually slow. Part of the blame for the imperfect car service defendant lays at the door of plaintiff and his assignors, themselves, who, it says, failed to furnish a sufficient and proper roadbed for the tramway, according to agreement.

Plaintiff and his assignors and other landowners had agreed with defendant, it seems, to furnish a right of way across their lands, and build a roadbed for defendant's tramway, in consideration of defendant's agreeing to haul their cane at 50 cents per ton, and the

tramroad had been built under this agreement. Owing to the wetness of the season, the roadbed proved to be insufficient, and the imperfectness of the car service was in part due to this. Defendant claims that this result is attributable to the fault of plaintiff and the other landowners in not furnishing a better roadbed, and to the weather, for neither of which it is responsible. We do not think this defense can hold. So far as the weather is concerned, the parties cannot be supposed to have contemplated at the time of entering into their contract that it would affect the tramway. Rainy weather does not, as a usual thing, make railroads impassable. So far as the deficiency of the roadbed is concerned, defendant alone is to blame. Its engineer superintended the construction, and no one pretends to say that the landowners did not do all the work that was required of them. After the tramway had been completed, its maintenance most unquestionably devolved upon defendant. It was defendant's railroad, for hauling over which defendant charged freight.

With the congested condition of the sugar mill, plaintiff and his assignors had nothing to do. They did not warrant the ripeness of the cane, but only bound themselves to deliver it. If the cane was not "sound, unfrozen cane," it was for defendant not to accept it, and let that be the issue; but, instead of this, defendant went on receiving cane, thereby giving rise to a very strong presumption that the cane continued to be such as was called for by the contract. Plaintiff strengthens this presumption by proof that he and his assignors promptly windrowed their cane, and by testimony that the cane was sound, whereas, defendant offers in rebuttal nothing, except the vague statement that a great deal of cane was rejected that season, the witness not being able to say whether any of it was part of plaintiff's cane, and the equally vague statement by counsel that the continuation of the grinding beyond the 70-day term stipulated in the contract was more in the way of an effort to help out the unfortunate situation than of strict business, and that defendant should not be made the worse for its meritorious conduct in attempting to save the crops of the cane growers. All that we find in the record to bear out this theory of the meritorious conduct of defendant is the following ques-

tion, to which no answer was given: "How long did the refinery continue grinding after the seventy-day term had expired, in order to save the cane crop of the cane sellers?" From the silence that followed this question, the inference would be that the grinding was not continued beyond the 70-day term, through disinterested motives, one single minute.

Defendant continued to receive cane up to the 21st of January. By its contract it should have begun not later than the 25th of October. Between these two dates are 89 days.

· We must conclude that during these 89 days the cane was suitable to be received, and that, in accordance with the contract, defendant was bound to receive the cane of plaintiff and his assignors at the rate of one-seventieth of the total crop per day, and that, if defendant had complied with this obligation, the entire crop would have been saved. It is very evident that a considerable proportion of the loss was caused by the inability of defendant to convert the cane juice into sugar as rapidly as could have been done, had the juice been of better quality, but the contract nowhere provides that the inability of defendant to dispose of the cane juice at the rate of one-seventieth of the crop per day should release defendant from the obligation to accept delivery of the cane at that rate.

We do not see how the question of default can come up in this case. If the doing of a thing can be put off without detriment, a contractor may infer that there can be no harm in delay, and putting in default becomes useful for the purpose of advising him of the desire of the obligee that the doing of the thing should not be postponed; but, in the case of the taking off of a cane crop, all delay is known to be fraught with danger, and it would seem that to require a cane grower to send a notice to that effect to a central sugar factory would be like requiring a man to send coals to Newcastle.

We think that the testimony of the witness Nuckolls, based on the prices actually paid for cane by the defendant during the season, was properly received, to show the value of this cane which defendant should have received, but did not receive; and we think the average of these prices, while not representing, in strictness, the amount due under the contract, is about as near to that amount as can now be arrived at. We understand that this was the basis of the judgment appealed from.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed, and that the case be remanded for further proceedings.